Marie Parlavecchio, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 6, 1981, before Judges WILKIN-SON, JR., BLATT and WILLIAMS, JR., sitting as a panel of three.

*Joseph T. Kownacki*, for petitioner.

*Stephen B. Lipson*, Assistant Attorney General, with him *Richard Wagner*, Chief Counsel, *Harvey Bartle, III*, Acting Attorney General, for respondent.

OPINION BY JUDGE BLATT, March 26, 1981:

The claimant[1] appeals here from an order of the Board[2] which affirmed a referee's denial of the unemployment compensation benefits because of willful misconduct which rendered her ineligible under Section 402(e) of the Pennsylvania Unemployment Compensation Law (Act).[3]

The claimant was employed as a checker and marker in the receiving department of Penn Traffic Company, which had inaugurated a contest in which all store employees were urged to obtain new credit applications for the store. The record indicates that the employees were called together in groups of six or

---

[1] Marie Parlavecchio.

[2] Pennsylvania Unemployment Compensation Board of Review.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

seven to be apprised of the policies of the contest and the procedure to be followed in obtaining applications. They were told that solicitations could be made on the store premises during periods of customer-contacts as well as during breaks or lunch hours. They were also told that telephone solicitations would be permissible, in which event signatures of the applicants were not required, but that special documentation in the way of verification by an outside firm would be undertaken by the company. Employees were to receive one dollar for each application they obtained.

The claimant received a total of $135 for her efforts: one dollar for each of the 110 applications she submitted, plus a $25 bonus. When questioned by the manager and credit manager of the store regarding signatures on the applications she solicited, however, the claimant at first said that all applicants had signed the applications personally. Upon being pressed further, she admitted that she had signed many of them herself, that she had given some to members of her family whom she "supposed" had signed them on behalf of others, and that at least two of the applicants were the children of relatives who had not been contacted by anyone prior to the submission of their applications. After going through all of her applications and sorting out the ones actually signed by the applicants, the claimant, at the direction of the manager and credit manager, who had observed her sorting of the applications, wrote and signed a statement indicating that she had signed the applicant's name on 101 of the applications on the line marked "Customer Signature". She was then dismissed from her employment because of the alleged misconduct.

The burden of proving willful misconduct which would justify dismissal and the denial of benefits is upon the employer, *Glasser v. Unemployment Compensation Board of Review*, 45 Pa. Commonwealth Ct.

29, 404 A.2d 768 (1979), and where the employer has prevailed below, our scope of review is limited to determining whether or not the findings of fact are supported by substantial evidence and whether or not an error of law was committed. Where the Board adopted the referee's findings without taking additional evidence, as here, we must review the findings of the referee, and, although the findings of fact must be affirmed if supported by substantial evidence, willful misconduct is a question of law to be resolved by this Court. *Pennsylvania Engineering Corp. v. Unemployment Compensation Board of Review*, 46 Pa. Commonwealth Ct. 305, 405 A.2d 1387 (1979). The claimant argues here that whatever she did was not in connection with her work, and it is true that a denial of benefits under Section 402(e) must be based upon a finding that the claimant's discharge was due to willful misconduct in connection with her work. *Frazier v. Unemployment Compensation Board of Review*, 49 Pa. Commonwealth Ct. 474, 411 A.2d 580 (1980). It is true that the claimant did not work in her employer's credit department and did not have specialized training in credit application procedures. She did, however, receive instruction, along with all other store employees, on the correct procedures to be followed in the contest in which only store employees could participate and in which all employees, by virtue of their employee status, were strongly encouraged to participate. We believe, therefore, that the conduct cited here by the claimant's employer was clearly in connection with her work.

As to whether or not what the claimant did was willful misconduct, that term's "meaning has been judicially developed to encompass the wanton and willful disregard of an employer's interest, a deliberate violation of rules, a disregard of expected behavior standards or negligence manifesting culpability,

wrongful intent, evil design or intentional and substantial disregard of the employer's interests or the employe's duties and obligations." *Serban v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 147, 150, 370 A.2d 755, 756 (1977). A finding of intent to wrong the employer is not necessary and a conclusion of willful misconduct may be based upon a finding of conscious indifference to the duty owed the employer. *Homony v. Unemployment Compensation Board of Review*, 11 Pa. Commonwealth Ct. 142, 312 A.2d 77 (1973).

The claimant argues that the evidence presented by the employer as to the invalidity of the signatures on the applications she claims to have secured is insufficient and/or unpersuasive. A careful review of the record, however, indicates that her own testimony was sufficient to show that she had signed many applications without the authority of the alleged applicants.

In *Schooley v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 383, 402 A.2d 1109 (1979), this Court determined that while the claimant's conduct in punching in the time cards of two fellow employees may have been no more than a friendly and considerate favor to her coworkers without harm or prejudice to her employer, it was willful misconduct in that it amounted to a disregard of behavior which an employer has a right to expect of an employee. The Court concluded that the claimant did realize or should have realized that exercising control over the time cards of others was not within her prerogatives as an employee and not in the employer's interest. As to the case before us, it is a matter of common knowledge that one does not "sign" the signature of another and that such knowledge is not dependent on any special credit education and training. The claimant here must have or should have realized that signing the name of another on a line

captioned "Customer's Signature" without the knowledge and consent of the "customer" was not within her prerogatives—either as an employee or otherwise—and was not, therefore, in her employer's interest. In light of her conscious indifference to the duty owed her employer, therefore, the referee's finding of willful misconduct as affirmed by the Board must stand.

ORDER

AND, NOW, this 26th day of March, 1981, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON, JR.