509 A.2d 926

Drs. William & James Katsur & Associates, Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 10, 1985, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Edward J. Van Allen, Kirkpatrick & Lockhart,* for petitioners.

*Jonathan Zorach,* with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 19, 1986:

Drs. Katsur & Associates (Katsur) appeals an Unemployment Compensation Board of Review order upholding a referee's decision granting benefits to Michael

C. Gigliotti. The referee concluded that Gigliotti's actions did not constitute willful misconduct under Section 402(e) of the Unemployment Compensation Law.[1] We vacate and remand.

Gigliotti, a dentist, was discharged for sexually harassing female assistants. The referee concluded that Gigliotti's conduct did not amount to sexual harassment, and that Katsur therefore had not met its burden of proving willful misconduct. The referee also concluded that the assistants' testimony was hearsay and not competent to support a finding.[2]

Where the employer, who has the burden of proving willful misconduct, does not prevail below, our scope of review is limited to determining whether the Board's findings are consistent with each other and with the conclusions of law and whether they can be sustained without a capricious disregard of competent evidence. *Defense Activities Federal Credit Union v. Unemployment Compensation Board of Review*, 83 Pa. Commonwealth Ct. 476, 478 A.2d 493 (1984).

Katsur contends that the referee erred by disregarding the testimony of the four assistants. We agree.

The assistants testified by reading from their handwritten personal statements made approximately

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] Our past decisions have held that hearsay evidence, properly objected to, is not competent to support a finding of the Board, but hearsay evidence, admitted without objection, will be given its natural and probative effect and may support a finding of the Board if corroborated by any competent evidence in the record. *See, e.g., Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976). However, the *Walker* rule is inapplicable if evidence is admissible under an exception to the hearsay rule.

five months prior to the referee's hearing.[3] No direct interrogation of the assistants transpired. Our review of the record reveals that neither the employer nor the claimant was accompanied by legal counsel at the hearing, indicating that the referee was thus charged with a heightened responsibility of supervising the presentation of evidence.[4] Prior to the assistants' testimony on Katsur's behalf, the referee stated, "[e]ach person is going to have to testify to their own personal knowledge."[5] When a representative for Katsur asked whether the assistants could read from their statements, the referee replied, "O.K." after being informed that each assistant had previously prepared her statement.[6] Gigliotti did not object to the assistants' testifying in this manner.

Although the assistants' testimony is technically hearsay because it recited out-of-court statements, several factors lead us to conclude that it was competent

---

[3] A summary of these statements reveals the following averments: Gigliotti (1) referred to one assistant as a "very sexy chick;" (2) he commented on an assistant's "sexy" new haircut and touched her hair, commenting on its softness; (3) he told dirty jokes; (4) he referred to the "nice legs" or "nice tush" of one patient and made a sexual comment about a patient wearing a tight skirt; (5) he placed, at times, his dental instruments on a female patient's chest; (6) he occasionally put his hands on the waist of an assistant; and (7) he told one assistant not to bring cheese and crackers for lunch because it disturbed him sexually.

Gigliotti's statements are not hearsay because they were not offered for the truth of any matter asserted therein; they were only offered to establish that Gigliotti made them.

[4] The referee must act reasonably in assisting an unrepresented party's development of necessary facts. *Bennett v. Unemployment Compensation Board of Review*, 66 Pa. Commonwealth Ct. 455, 445 A.2d 258 (1982).

[5] Reproduced Record, pp. 23a-24a.

[6] Reproduced Record, p. 24a. There is nothing in the record indicating that the assistants could not have testified from their present recollection.

evidence. The statements were prepared by the assistants and recounted their firsthand knowledge of past events. This testimony, albeit unorthodox in presentation, was subject to attack through cross-examination. It, therefore, carried indicia of reliability not present with traditional hearsay, where the declarant is not present in court to be cross-examined.[7] Moreover, this mode of presentation received the referee's explicit endorsement, upon which Katsur and the witnesses relied. A referee's hearing is not subject to technical rules of evidence. Section 505 of the Administrative Agency Law.[8] This testimony was relevant to the willful misconduct issue and highly probative. The referee was thus permitted to receive it under Section 505. *Murphy v. Department of Public Welfare*, 85 Pa. Commonwealth Ct. 23, 480 A.2d 382 (1984).

Because the assistants' testimony (1) related personal knowledge and was subject to challenge, (2) was presented in a hearsay nature at the express authorization of the referee, (3) was unobjected to and (4) was relevant and probative, the referee erred as a matter of law in disregarding this testimony. Accordingly, we must remand for new findings of fact and conclusions of law.[9]

---

[7] As Judge SPAETH observed in *Commonwealth v. Dugan* (Concurring Opinion), 252 Pa. Superior Ct. 377, 386, 381 A.2d 967, 971 (1977):

> The rule against hearsay evidence should not be narrowly defined, and rigidly enforced. It has repeatedly been changed, in response to experience with its application and analysis by scholars, and it should always be interpreted in light of the dangers it is intended to guard against. . . . The principal reason for excluding hearsay is the danger that the declarant's credibility cannot be assessed.

[8] 2 Pa. C. S. §505.

[9] Katsur further contends that Gigliotti's conduct amounts to sexual harassment constituting willful misconduct. Because we are remanding this case to determine the nature of this conduct, we

ORDER

The order of the Unemployment Compensation Board of Review, No. B-230553 dated May 14, 1984, is vacated and this case is remanded for further proceedings not inconsistent with the foregoing opinion.

Jurisdiction relinquished.

---

will not reach this issue. However, for guidance purposes we note that offensive actions toward co-workers of the opposite sex going beyond mere friendliness or attentiveness may constitute willful misconduct. *See, e.g., Zuraw v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 548, 434 A.2d 1312 (1981) (employee's hugging and touching female co-worker and removing his pants while alone with a female employee constituted willful misconduct); *Strickhouser v. Unemployment Compensation Board of Review*, 80 Pa. Commonwealth Ct. 587, 471 A.2d 1338 (1984) (claimant was discharged after dropping his pants in front of two female co-workers); *Stover v. Unemployment Compensation Board of Review*, 75 Pa. Commonwealth Ct. 272, 461 A.2d 906 (1983) (claimant was charged with willful misconduct when he allegedly ran his fingers through a female employee's hair). Moreover, the record indicates that Gigliotti was warned by Katsur that he must refrain from his behavior regarding the female assistants.

Katsur also argues that Gigliotti's behavior constitutes sexual harassment in violation of the Equal Employment Opportunity Commission's Guidelines on Sexual Harassment. We will not address this issue either as the case is being remanded for new findings on Gigliotti's conduct.

Although Katsur argues that the referee capriciously disregarded evidence of Gigliotti's independent contractor status, it chose not to pursue this issue at the referee's hearing.