## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert A. Heidel, Jr.,         :
                 Petitioner     :
                                :
      v.                      :   No. 849 C.D. 2018
                                :   ARGUED: February 14, 2019
Unemployment Compensation     :
Board of Review,              :
                 Respondent    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                 FILED: March 6, 2019

Robert A. Heidel, Jr. (Claimant) petitions for review of the June 1, 2018 Order of the Unemployment Compensation Board of Review (Board) affirming the Referee's decision to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because he was discharged from work for willful misconduct. We affirm the Board's Order.

## Background

Claimant worked as a full-time MAT technician/shift leader[2] for Huntingdon Fiberglass Products, LLC (Employer) from April 5, 1977 through November 9, 2017. Bd.'s Finding of Fact (F.F.) No. 1. On November 9, 2017, Claimant hugged a female

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law states that an employee shall be ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e).

[2] The record does not indicate what a "MAT technician" is.

subordinate and licked her earlobe with his tongue. *Id.* No. 4. Employer immediately suspended Claimant pending an investigation. *Id.* No. 5. During the investigation, Claimant admitted to Employer that he had, in fact, hugged the female subordinate and licked her earlobe with his tongue, but stated that he did so in an attempt to cheer her up. *Id.* No. 6; Notes of Testimony (N.T.), 1/31/18, at 7, 16, 20.

On November 10, 2017, Employer discharged Claimant for violating its anti-harassment policy, which provides that unwelcome advances and touching, as well as obscene gestures, are prohibited in the workplace. Bd.'s F.F. No. 2. Claimant was made aware of Employer's anti-harassment policy in May 2014, when Employer gave Claimant a revised employee handbook containing the policy. *Id.* No. 3.

Claimant filed a claim for UC benefits, which the local Service Center denied. The Service Center found that Claimant's acts of hugging a female subordinate and licking her ear demonstrated a disregard of the standards of behavior that Employer had the right to expect of its employees. Not. of Determination, 12/4/17, at 1. The Service Center also found that Claimant did not establish good cause for his conduct, rejecting his assertion that he was merely attempting to "cheer up" his subordinate. *Id.* Because Employer sustained its burden of proof and Claimant did not establish good cause for his actions, the Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Claimant timely appealed to the Referee, who held a hearing on January 31, 2018. Claimant appeared with counsel via telephone and testified on his own behalf. Employer presented the testimony of its Chief Operating Officer, Kyle Frank, who investigated the incident between Claimant and the female subordinate.[3] Following the hearing, the Referee found that Employer satisfied its burden of proving that

---

[3] Gloria Carbaugh, Employer's Human Resource Manager, was also present at the hearing, but she did not testify.

2

Claimant's acts of hugging and licking the ear of his subordinate constituted willful misconduct. Ref.'s Order at 2. Therefore, the Referee concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Claimant timely appealed to the Board, which adopted the Referee's Findings of Fact and Conclusions of Law and affirmed the Referee's decision. The Board further concluded:

> On appeal, [C]laimant alleges he did not lick his subordinate's ear, but rather kissed it, that the record lacks evidence [that] it was unwanted, and that it was not an obscene gesture. [C]laimant testified he told [E]mployer [that] he licked his subordinate's ear, so his allegation of different conduct is unconvincing. Although the Board agrees that [C]laimant's actions were not obscene gestures and acknowledges that licking and kissing may be slightly different in magnitude, they both, like the hug, are intimate forms of touch, different from a tap on the shoulder or handshake that one can reasonably expect in social situations. This type of intimate contact would require affirmative consent to be acceptable. The absence of [C]laimant being pushed away and verbally admonished at the moment, especially considering his position of power over the subordinate, does not establish consent. Generally, a complaint of sexual harassment may be brought by anyone made uncomfortable by inappropriate conduct, not just he or she who was touched, so a complaint by a different employee would establish willful misconduct, even absent a [work] policy.

Bd.'s Order at 1. Claimant now petitions for review of that decision.[4]

## Issue

Claimant presents one question for our review: Did Employer meet its burden of proving that Claimant's discharge was the result of willful misconduct under Section 402(e) of the Law?

---

[4] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

**Analysis**

Our Court has defined "willful misconduct" as a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that the employer has a right to expect of its employees, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations. *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486-87 (Pa. Cmwlth. 2014). An employer seeking to prove that a claimant committed willful misconduct by violating a work policy "must demonstrate the existence of the policy, its reasonableness, and its violation." *Klampfer v. Unemployment Comp. Bd. of Review*, 182 A.3d 495, 500 (Pa. Cmwlth. 2018). If the employer satisfies its burden of proof, then "the burden shifts to the claimant to demonstrate good cause for violating the rule." *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016).

At the hearing, Mr. Frank testified that Employer has an anti-harassment policy, which prohibits employees from engaging in unwelcome advances and touching of other employees. N.T., 1/31/18, at 5, 7-8. Employer distributed the policy to all employees in May 2014 in the company's employee handbook. *Id.* at 5, 8. Mr. Frank testified that an employee may be discharged for his or her first violation of the policy. *Id.* at 5. Although Employer did not provide training to its employees regarding the anti-harassment policy, "when [the handbook was] handed out to the employees, [Employer] instructed everybody to come to [management] with any questions they may have on the polic[y]." *Id.* at 8. Mr. Frank further testified that he knew that "[Claimant] . . . had the anti-harassment policy" and, in his opinion, "an average person could be expected to believe that those kind of actions [(hugging and licking a co-worker's ear)] are unwanted." *Id.* at 10. In response, Claimant testified that he did not recall ever receiving Employer's anti-harassment policy and he had no reason to

believe that his conduct toward the female subordinate was a violation of the policy. *Id.* at 15-17.

The Board, however, credited Mr. Frank's testimony. It is well settled that the Board is the ultimate fact-finder in UC cases and is empowered to resolve conflicts in the evidence and determine the credibility of witnesses. *Metro. Edison Co. v. Unemployment Comp. Bd. of Review*, 606 A.2d 955, 957 (Pa. Cmwlth. 1992). A witness's credible testimony may be sufficient to establish the existence of a work policy. *See Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 608-09 (Pa. Cmwlth. 2011) (finding the testimony of the employer's witnesses sufficient to support the Board's finding regarding the existence of a policy prohibiting the use of cell phones while on duty). We conclude that Mr. Frank's credible testimony was sufficient to support the Board's determination that Claimant was aware, or should have been aware, of Employer's anti-harassment policy and that Claimant intentionally violated the policy by hugging his female subordinate and licking her ear in the workplace.

Furthermore, even if Claimant had not violated Employer's anti-harassment policy, his behavior toward the female subordinate demonstrated a disregard of the standards of behavior that Employer had a right to expect of its employees. This Court has recognized that "the existence of a specific rule is not necessary where the employer has a right to expect a certain standard of behavior, that standard is obvious to the employee, and the employee's conduct is so inimical to the employer's interests that discharge is a natural result." *Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1162 (Pa. Cmwlth. 2013); *see Biggs v. Unemployment Comp. Bd. of Review*, 443 A.2d 1204, 1206 n.3 (Pa. Cmwlth. 1982). We conclude that Claimant's acts of hugging and licking the ear of a female subordinate were clearly beneath the standards of appropriate behavior in the workplace, particularly where Claimant was in a position

of power over the female subordinate. *Cf. Stover v. Unemployment Comp. Bd. of Review*, 461 A.2d 906, 907-08 (Pa. Cmwlth. 1982) (concluding that the claimant's act of running his fingers through a female co-worker's hair was a disregard of the standards of behavior that the employer can rightfully expect of its employees).

We also conclude that Claimant failed to establish good cause for his conduct. Claimant contends that he did not intend anything sexual in his conduct toward the female subordinate and that he was merely trying to "cheer her up." N.T., 1/31/18, at 16. According to Claimant, he and the subordinate had a friendly relationship; neither the subordinate nor any witnesses to the incident said that his conduct was inappropriate; and after Employer told Claimant his conduct was inappropriate, he apologized and promised never to do it again. *Id.* at 15-18. The Board, however, did not believe that Claimant's conduct was merely an innocent gesture of consolation between co-workers. Rather, the Board found that Claimant's behavior toward the female subordinate was an "intimate form[] of touch, different from a tap on the shoulder or handshake that one can reasonably expect in social situations. This type of intimate contact would require affirmative consent to be acceptable." Bd.'s Order at 1. We agree.

Although Claimant repeatedly characterizes his actions as a "mere hug and a peck on the earlobe," Claimant's Br. at 15, 18-19, the Board credited Mr. Frank's testimony that Claimant admitted to licking his subordinate's ear with his tongue, Bd.'s F.F. No. 6. Claimant does not dispute this fact, admitting that he put his arms around the subordinate, his tongue touched her ear "momentarily," and bodily fluid "might have been" transferred. N.T., 1/31/18, at 16; *see* Record (R.) Item No. 2 at 1.

While Claimant maintains that there is no evidence that his conduct was unwelcome, Claimant's Br. at 16, Claimant testified that the subordinate did not invite him to hug her or to lick her ear, N.T., 1/31/18, at 20. Claimant also admitted that his

6

conduct was wrong. *Id.*; R. Item No. 2 at 1.[5] In fact, on his Claimant Questionnaire filed with the Department of Labor and Industry, Claimant stated that the subordinate "went straight to the union president" after the incident, R. Item No. 2 at 3, also indicating that the conduct was unwelcome. Where the Board's factual findings are supported by substantial, credible evidence, those findings are conclusive on appeal. *Brandt v. Unemployment Comp. Bd. of Review*, 643 A.2d 78, 79 (Pa. 1994). We agree with the Board's conclusion that

> [t]his type of intimate contact would require affirmative consent to be acceptable. The absence of [C]laimant being pushed away and verbally admonished at the moment, especially considering his position of power over the subordinate, does not establish consent.

Bd.'s Order at 1.

Finally, Claimant asserts that before discharging him for the November 9, 2017 incident, Employer had never reprimanded Claimant for inappropriate behavior toward a female co-worker in his 40 years with the company. Claimant contends that one infraction cannot be the basis for a willful misconduct determination. We reject this claim.

"It is well settled that a single inciden[t] of misconduct can constitute willful misconduct." *Jones v. Unemployment Comp. Bd. of Review*, 373 A.2d 791, 792 (Pa.

---

[5] Claimant testified as follows:

[Mr. Frank]: [D]id [the female subordinate] invite you to grab her and lick her?

[Claimant]: No, she didn't invite me. She was just standing there and I just gave her a hug when – before we started working.

[Mr. Frank]: [D]o you feel that you need[ed] training to tell you that it is wrong to lick a co[-]worker?

[Claimant]: No, I – I know what I did was – was wrong.

N.T., 1/31/18, at 20.

Cmwlth. 1977). Moreover, an absence of prior warnings is not a defense in a willful misconduct case where, as here, Claimant admitted to the misconduct. This Court has explained:

> The [claimant] . . . contends that he received no forewarning of the consequences of his misconduct and that his abrupt dismissal in lieu of some lesser discipline somehow indicates "personal motives" on the part of his supervisors[,] which [the claimant] contends were the real cause for his dismissal. Of course, *the lack of prior warnings is not a defense in willful misconduct cases of this nature. The admitted misconduct on the part of the [claimant] was sufficient to warrant discharge and denial of unemployment compensation benefits . . . .*

*Placid v. Unemployment Comp. Bd. of Review*, 427 A.2d 748, 750 (Pa. Cmwlth. 1981) (emphasis added) (internal citation omitted).

## Conclusion

Based on the evidence of record, we conclude that Claimant was discharged for willful misconduct under Section 402(e) of the Law and, therefore, is ineligible for UC benefits. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert A. Heidel, Jr.,          :
              Petitioner       :
                                :
         v.                   :   No. 849 C.D. 2018
                                :
Unemployment Compensation   :
Board of Review,                :
              Respondent      :

# **O R D E R**

AND NOW, this 6th day of March, 2019, the Order of the Unemployment Compensation Board of Review, dated June 1, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge